[Civ. No. 15241. Second Dist., Div. Three. June 24, 1946.]

CITY OF PASADENA, Respondent, v. CITY OF ALHAMBRA et al., Defendants; CALIFORNIA-MICHIGAN LAND AND WATER COMPANY (a Corporation), Appellant.

Paul Vallée and Goodspeed, McGuire, Harris & Pfaff for Appellant.

H. Burton Noble, City Attorney (Pasadena), A. E. Chandler, C. C. Carlton, Spencer Burroughs, Henry Holsinger, James C. Bone, City Attorney (Arcadia), Gerald E. Kerrin, Robert E. Moore, Jr., Hahn & Hahn, Edwin F. Hahn, Potter & Potter, Bernard Potter, Sr., Merriam, Rinehart & Merriam, Ralph T. Merriam, Laurence B. Martin, Frederick G. Stoehr, Emmett A. Tompkins, City Attorney (Alhambra), Kenneth K. Wright, Paul F. Garber, City Attorney (Monrovia), Walter F. Dunn, City Attorney (Sierra Madre), Anderson & Anderson, Trent G. Anderson, John C. Packard, Bacigalupi, Elkus & Salinger, Claude Rosenberg, Derthick, Cusack & Ganahl, W. J. Cusack, Wilton W. Webster, Dunn & Sturgeon, Chandler & Wright, Howard Wright, Bailie, Turner & Lake, Norman A. Bailie, Cruickshank, Brook & Dunlap, Boyle & Holmes, John W. Holmes, Frank P. Doherty, Gibson, Dunn & Crutcher, and Ira C. Powers for Respondent.

WOOD, J.—This is a petition of the California-Michigan Land and Water Company, a corporation, for a writ of supersedeas to stay the enforcement of a judgment relating to water rights.

In September, 1937, the city of Pasadena filed an action against twenty-seven defendants, including petitioner, for a declaration of rights of the parties to underground water in a certain area, referred to as the Raymond Basin Area; to quiet title to such water rights; and for injunctive relief to protect those rights.

The cause came on for trial in May, 1944, and all of the parties to the action except petitioner stipulated to the judgment. The judgment provides, in part, that each of the parties to the action has the right to take water from the ground in said area; that said rights are of equal priority and of the same legal force and effect; that petitioner's water right is in that part of the area designated as the Western Unit; that the total of the rights, described as the "present unadjusted" rights, to take water from the Western Unit is 25,608 acre feet per year; that petitioner's "present unadjusted right" of said total is 521 acre feet per year; that the safe yield of said unit is 18,000 acre feet per year; that to maintain and protect the supply of water in the ground in said unit each party is limited in the exercise of its "present unadjusted right" to a "decreed right"; and that petitioner's "decreed right" is 359 acre feet per year. The judgment further provides that all the parties, except petitioner, are forever enjoined on and after July 1, 1944, from taking more water than their decreed rights, and as to petitioner the judgment provides that it is so enjoined from and after July 1, 1945; provided, however, that any party to the action may take in any 12-month period, for its beneficial use and for the release of water for use by other parties in accordance with the "Raymond Basin Area Water Exchange Agreement of 1943 and amendment thereto," any amount of water not exceeding 120 per cent of its decreed right, and such greater amount as may become necessary in case of an emergency as determined by the water master, but in no event shall the aggregate amount taken by any party during any period of sixty consecutive months exceed the amount released to it pursuant to said above referred to agreement, and five times the annual decreed right of said party. The judgment also provides that a water master shall be appointed by the court to enforce the provisions of the judgment, the agreement above referred to and the amendment thereto and the instructions and orders of the court. It authorizes the creation of an advisory board to assist the water master — such board to be designated by, and

to represent, the parties to the action; and it provides that the payment of the costs for such representation "shall be optional with the respective parties," and any party at his own expense has the right to consult and advise with said board or water master. It further provides that each party at his own expense shall measure and keep records of all its diversions of water from any source, of its importations of water, and of its production of water from the ground in said area, subject to the approval of the water master as to equipment and methods; that each party shall measure and keep records of its production and distribution in such manner as to show its use in, transfers within, and exports of water from the area, or any subdivision thereof, as required by the water master; that once a month or as required by the water master, each party shall measure and record the depth to the water table in all wells owned or operated by it within the area; that any party owning any facilities for the diversion of water from any source contributing to the supply of water in the ground in that area, or for pumping or otherwise taking water from the ground in said area, at his own expense, shall install and at all times maintain in good working order reliable measuring devices and facilities for testing said devices and shall keep records of its diversions and production through the use of such devices and facilities as may be required by the water master; and that the cost of enforcing the judgment should be borne by the parties in proportion to their respective decreed rights. Defendant California-Michigan Land and Water Company appealed from the judgment on February 23, 1945.

On December 10, 1945, the water master filed a report with the court which stated that the records of petitioner showed the petitioner had pumped 488 acre feet of water from the ground in the area from July 1, 1945, to November 2, 1945; that it had exceeded its decreed right; and that it was continuing to pump water in excess of that right. A hearing on said report was had on January 11, 1946, at which hearing petitioner objected to the jurisdiction of the court, stating that the injunction is mandatory in character and, therefore, is stayed by the appeal. The court decided that the injunction herein is prohibitory, and not mandatory, and therefore is not stayed by the appeal. Thereafter, the court issued an order to show cause, based upon an affidavit of the city attorney of Pasadena, and ordered petitioner to appear on March 4, 1946, and show cause why it should not be punished for

contempt. Petitioner thereupon, on February 26, 1946, filed its petition for a writ of supersedeas to stay enforcement of the judgment pending the decision on appeal. On February 27, 1946, this court ordered that respondent show cause why a writ of supersedeas should not be issued, and ordered that all proceedings to enforce the judgment be stayed pending the hearing.

Petitioner contends that the injunction is mandatory, requiring affirmative action by petitioner, and therefore is stayed by the appeal. ■ It is established that an injunction mandatory in character is automatically stayed by an appeal and that a prohibitory injunction is not so stayed. "The question of whether a decree is of the one character or the other is sometimes a difficult one, as an order which is entirely negative or prohibitory in form may prove upon analysis to be mandatory and affirmative in essence and effect, or the decree may partake of a dual nature, in which event an appeal will stay operation of the mandatory features but not of the prohibitory." (*Food & Grocery Bureau* v. *Garfield,* 18 Cal.2d 174, 177 [114 P.2d 579].) ■ In the present case the judgment commands the doing of many affirmative acts, such as requiring the parties to measure and keep records of all production, diversion, and distribution of water, the depth to the water table, to install and maintain in good order devices for such measuring of water, to install facilities for testing said devices, to have records available for inspection by the water master, and to contribute to the expenses of the water master.

Petitioner asserts further that the judgment compels it to surrender a position which it holds and which, upon the facts alleged by it in its answer, it is entitled to hold as one owning prior and paramount overlying owner's rights, and prior and paramount prescriptive rights. It was stated in the case of *Stewart* v. *Superior Court,* 100 Cal. 543, 547 [35 P. 156, 563], "An injunction, though restrictive in form, if it have the effect to compel the performance of a substantive act, is mandatory, and necessarily contemplates a change in the relative positions or rights of the parties from those existing at the time the injunction is granted, or the decree is entered." Therefore, "if the injunction compels a party affirmatively to surrender a position which he holds and which upon the facts alleged by him he is entitled to hold, it is mandatory." (*Ambrose* v. *Alioto,* 62 Cal.App.2d 680, 685 [145 P.2d 32].) Petitioner is a public service corporation which, since 1913, has been en-

gaged in supplying water, from sources involved herein, for domestic, industrial, irrigational and municipal purposes. It alleges that, under its water rights, it has the right to take 700 acre feet of water a year, and any additional amount as may be reasonable and necessary to serve its consumers. Since 1937 the population of the area served by petitioner increased from 3,300 to approximately 5,000. At the time of the trial petitioner was using in excess of 800 acre feet of water a year for the reasonable and necessary uses of its consumers, and contends that it is entitled to that volume for such purposes. It alleges that it has the prior and paramount right to such water by reason of its ownership of approximately 171 acres of land in which it has all the appropriative, prescriptive, and overlying landowner's water rights, and by reason of its ownership of various other water properties and water rights which have been owned continuously and adversely for more than forty years. It further alleges that the average annual supply of water to that general vicinity by rainfall and run-off from the mountains is more than 62,000 acre feet. It was stipulated that all of the water taken by each of the parties to the action was taken adversely to the claims of each of the other parties.

In the case of *Joerger* v. *Mt. Shasta Power Corp.*, 214 Cal. 630 [7 P.2d 706], the trial court had issued a temporary injunction restraining defendants from " 'continuing to divert any of the waters of Hat Creek from the natural channel of said stream, where the same passes through, over, along, by, upon and past' " the plaintiff's land. Defendants sought a writ of supersedeas to stay the operation of the judgment pending appeal. The writ was denied without prejudice upon the ground that the injunction was mandatory in character and its effect was stayed as a matter of law pending the appeal, and the court stated therein, at page 637: "After further consideration of the question we are persuaded that the injunctive order issued herein has the essential characteristics of a mandatory injunction. The defendants are and always have been lawfully in possession of their property. In that possession they are engaging in a lawful use thereof. They are not trespassing upon any of the rights of the plaintiff. They are not maintaining a nuisance. They are entitled in any event to their proportional share of the water by reason of the fact that their rights and the rights of the plaintiff are correlative, co-ordinate and in common as to said oppo-

site riparian lands. These rights may be exercised by either party subject to the equitable power of the court to apportion the use of the water as between them. The effect of the order, if enforced, would be to disturb a lawful use of property lawfully in possession, and to dispossess the defendants of the use of any of the waters of the stream. It would thus compel the surrender of the lawful possession of real property and would amount to affirmative relief as contemplated by the decisions. (*United Railroad* v. *Superior Court,* 172 Cal. 80 [155 P. 463]; *Ohaver* v. *Fenech,* 206 Cal. 118 [273 P. 555].)''

In the case of *People* v. *Stutz,* 66 Cal.App.2d 791 [153 P.2d 182], the court found that portions of a building were dangerous to life and property, constituted a public nuisance, and ordered that all use of such portions cease until major changes were made. In holding that the injunction was mandatory, the court stated, at page 794, ''Thus petitioners' right to use the property under their lease was interfered with. Such a right is a vested property right. Also petitioners' contracts with their guests would of necessity be terminated during the period of remodeling. Thus the injunction necessarily contemplated, and its enforcement would compel a change in the position and rights of petitioners and force them to surrender a position and property rights which they lawfully held at the time it was issued by causing them and their tenants to vacate during the remodeling period. Thus by requiring an affirmative action on the part of petitioners and the abandonment of their property rights, the effect of the injunction is mandatory and is automatically stayed by the appeal.''

Petitioner asserts further, in support of its contention that the injunction changes its position, that the effect of the judgment, in decreeing petitioner's water right to be 521 acre feet per year (the unadjusted right) but limiting its use to 359 acre feet per year (the decreed right), is to oust petitioner from possession of 162 acre feet of water per year. In the case of *Byington* v. *Superior Court,* 14 Cal.2d 68 [92 P.2d 896], the city of San Francisco was decreed a prescriptive right to store water from a river to the capacity of two reservoirs then owned by it, and was enjoined from storing water in excess of that amount. Subsequent to the entry of that judgment, and while the case was on appeal, the city enlarged the capacity of one of the reservoirs and stored water therein to

the amount of the enlarged capacity. In holding that the injunction required the surrender of real property and, therefore, was mandatory and stayed by appeal, the court stated, at page 70, ''The authorities indicate that an injunctive decree that compels the surrender of the lawful possession of real property amounts to the granting of affirmative relief and is mandatory in character.'' In that case the trial court found that the city was entitled to the amount of water it was using at the time of the decree, but enjoined it from taking water in excess of the capacity of its reservoirs at that time, whereas in the present case the trial court found that petitioner was not entitled to the amount of water it had been using over the past several years, and, furthermore, enjoined it from using the full amount to which it found petitioner was entitled as its unadjusted right. It appears that the decree herein affirmatively compels petitioner to surrender a substantial existing right. The injunction herein is mandatory in character.

■ Irrespective of whether an injunction is mandatory or prohibitory, this court has the inherent power to issue a writ of supersedeas if such action is necessary or proper to the complete exercise of its appellate jurisdiction (*Food & Grocery Bureau* v. *Garfield,* 18 Cal.2d 174, 177 [114 P.2d 579]; Const., art. VI, § 4b), and may issue the writ upon any conditions it deems just. (Rules on Appeal, rule 49.) ■ It is apparently petitioner's theory that the water involved in this action is an underground stream, that petitioner takes water from a place therein below the places where the other defendants and respondent city of Pasadena take water, and if petitioner is prevented from using the water it will be lost irrevocably and will be wasted. It is apparently the theory of respondent that the water is an underground reservoir, and that any use of the water depletes the supply available to the other defendants and respondent city of Pasadena. Petitioner, as above stated, is a public service corporation which has been engaged in supplying water for public use in a certain area since 1913. As the population of that area increased, the number of consumers served by petitioner also increased, which necessitated a corresponding increase in its water supply. It does not appear that the other twenty-six defendants herein ever objected to such increase, nor that respondent, city of Pasadena, objected prior to filing this action. Furthermore, in view of the many years' delay in instituting this proceeding, and the fact that seven years elapsed from the

date the action was filed (September, 1937) to the date of trial (May, 1944), it cannot be said that respondent will be deprived of a substantial right should action on the judgment be suspended until decision on the appeal is made. The petitioner has never been a party to the "Raymond Basin Area Water Exchange Agreement of 1943 and Amendment thereto," which agreement was attached to and made a part of the judgment. It appears that a stay of enforcement of the judgment should be granted.

It is ordered that a writ of supersedeas issue staying all proceedings in the trial court as against the California-Michigan Land and Water Company until the final determination of the cause on appeal.

Desmond, P. J., and Shinn, J., concurred.