[S. F. No. 16169. In Bank.—July 22, 1939.]

LEWIS F. BYINGTON et al., Petitioners, v. THE SUPERIOR COURT OF STANISLAUS COUNTY et al., Respondents.

John J. O'Toole, City Attorney, Dion R. Holm, Assistant City Attorney, and A. E. Chandler for Petitioners.

Sloss, Turner & Finney, Murray Bourne and M. C. Sloss for Respondents.

THE COURT.—The petitioners Byington, Filmer, McCallum, McLaughlin and Murphy, as members of and constituting the Public Utilities Commission of the city and county of San Francisco, and the petitioner Cahill, as the manager of utilities of said city and county, seek by this proceeding to review and annul an order of the respondent superior court adjudging them guilty of contempt and directing that each pay a fine of $100 or in lieu thereof to serve one day in jail for each $5 of the fine remaining unpaid. The alleged contempt consisted of the violation of an injunction entered by the respondent court, the execution of which, petitioners claim, had been stayed by an appeal.

The action in which the injunction had issued was commenced on May 31, 1932, by Meridian, Ltd., a corporation, against the city and county of San Francisco and four other defendants. It was in the nature of an action to quiet title to water rights and for injunctive relief to protect those rights. As between the plaintiff and the city the action involved the rights of the city as an appropriator of water of the Tuolumne River in connection with its Hetch Hetchy project, and the rights of the plaintiff as a riparian owner and appropriator of water down stream from the works of the city. At the conclusion of a protracted trial the respondent superior court on June 18, 1936, decreed to the defendant city, as superior to the plaintiff's riparian right, a prescriptive right to store 235,465 acre-feet of water per seasonal year and enjoined it from storing water in excess of such amount, which amount represented the then capacity of the city's two reservoirs. Both parties appealed.

It appears that during the progress of the trial, the city had started work on increasing the height of its Hetch Hetchy dam to provide holdover storage in that reservoir for its Moccasin power plant. The work was completed in April, 1938, subsequent to the entry of judgment and while the cause

was on appeal. The capacity of the dam was thereby increased from 206,000 to 340,830 acre-feet. The enlarged reservoir was filled during the period May 12 to 30, 1938, pending the appeal. Upon the filing of an affidavit by plaintiff's counsel, the trial court cited the petitioners to show cause, if any they had, why they should not be adjudged in contempt for storing in the enlarged reservoir a quantity of water in excess of that awarded to the city under its decree. Contrary to the contention of the petitioners herein, the respondent court upon the hearing concluded that the injunction issued by it was wholly prohibitory, and not mandatory, in character and was not therefore stayed by the appeal so as to warrant a storage of water greater than that therein allotted to the city.

 It is well settled that a prohibitory injunction is not stayed by an appeal therefrom while an injunction mandatory in character is automatically stayed by appeal. (*Joerger* v. *Mt. Shasta Power Corp.*, 214 Cal. 630, 637 [7 Pac. (2d) 706]; *Ohaver* v. *Fenech*, 206 Cal. 118 [273 Pac. 555]; *Baar* v. *Smith*, 201 Cal. 87 [255 Pac. 827].) Whether an injunction is prohibitory or mandatory in character is not always easy of determination. What may appear to be negative or prohibitory frequently upon scrutiny proves to be affirmative and mandatory. The authorities indicate that an injunctive decree that compels the surrender of the lawful possession of real property amounts to the granting of affirmative relief and is mandatory in character. (*Clute* v. *Superior Court*, 155 Cal. 15, 18–20 [99 Pac. 362, 132 Am. St. Rep. 54]; *Joerger* v. *Mt. Shasta Power Corp.*, 214 Cal. 630, 637, 638 [7 Pac. (2d) 706].) The Clute case, *supra*, declares that such a decree, though couched in terms of prohibition, is mandatory in effect, and a proceeding by the court issuing it to punish a violation as a contempt is in the nature of process for the enforcement of the affirmative feature and is not permissible pending appeal. In that case an injunction issued "restraining the defendant Clute from collecting any moneys of the corporation or disbursing the same except on the written order of the president and secretary, also restraining him from representing himself as manager and treasurer of the corporation and 'from interfering with, or directing, or attempting to direct or control the employees of said corporation' ". Clute prosecuted an appeal from the decree, pending which, and in violation of the terms of the decree, he prevented an employee of

the corporation from entering the office. He was adjudged in contempt. Upon a review of the contempt proceeding, this court, while recognizing that the injunction was couched in terms of prohibition, nevertheless held it to be affirmative or mandatory in character. It is there declared: "If Clute was in the actual possession of the hotel and the personal property in it, an order punishing him for preventing another person from entering and taking charge of the books, keys, and other property could have no other purpose or effect than to compel him to turn over his possession to such other, or at least to surrender his theretofore exclusive possession. . . . The status of the parties, at the time the injunction was issued, was this: Clute, claiming to hold on behalf of the corporation, was resisting a right of entry claimed by persons who, as he asserted, had no authority from the corporation to take possession. An order turning over the control of the property from him to the other claimants would certainly, if executed, operate to change that status. The injunction was, therefore, mandatory in effect, and this regardless of the fact that, in law, the corporation rather than Clute, may be said to have been in possession. It is, therefore, unimportant that the court inserted in its order of commitment a finding that Clute was not in possession of the hotel or its contents. For the purpose of determining the effect of this injunction as mandatory or prohibitory, we must consider the result of an enforcement of the writ of the position of the defendant, as asserted in the court below. If the injunction compels him affirmatively to surrender a position which he holds, and which, upon the facts alleged by him, he is entitled to hold, it is mandatory."

Analogous reasoning was employed in the comparatively recent Joerger case, *supra*, wherein a temporary injunction had issued restraining the defendants "from continuing to divert any of the waters of Hat creek from the natural channel of said stream, where the same passes through, over, along, by, upon and past" the plaintiff's riparian land. Pending an appeal from such seemingly prohibitory injunctive decree, the defendants sought a *supersedeas* to stay its operation. The application was denied without prejudice upon the ground that the injunction was mandatory in character and stayed as a matter of law pending the appeal. In so concluding, this court stated:

"After further consideration of the question we are persuaded that the injunctive order issued herein has the essential characteristics of a mandatory injunction. The defendants are and always have been lawfully in possession of their property. In that possession they are engaged in a lawful use thereof. They are not trespassing upon any of the rights of the plaintiff. They are not maintaining a nuisance. They are entitled in any event to their proportional share of the water by reason of the fact that their rights and the rights of the plaintiff are correlative, coordinate and in common as to said opposite riparian lands. These rights may be exercised by either party subject to the equitable power of the court to apportion the use of the water as between them. The effect of the order, if enforced, would be to disturb a lawful use of property lawfully in possession, and to dispossess the defendants of the use of any of the waters of the stream. It would thus compel the surrender of the lawful possession of real property and would amount to affirmative relief as contemplated by the decisions. (*United Railroads* v. *Superior Court*, 172 Cal. 80 [155 Pac. 463]; *Ohaver* v. *Fenech, supra*.)"

In our opinion, the foregoing authorities are decisive of the present proceeding. The reasoning therein compels the conclusion that the injunction involved herein was mandatory in character and stayed by the appeal therefrom. Throughout the trial of the main action, and up to the present moment, the city has contended that in addition to the prescriptive right recognized in and awarded to it under the decree of the respondent court, it was the owner and possessor of certain appropriative rights in and to the waters of the Tuolumne River. The effect of the injunctive decree was to compel the city to restrict its storage solely to the amount of water to which it was entitled under its prescriptive right and to subordinate certain of the city's appropriative claims to that of the plaintiff in the action and, in effect to deprive the city of the full possession and privilege of exercising such appropriative rights. That the appropriative rights consistently asserted by the city were improperly denied to it by the decree of the respondent court, is attested by the fact that this court recently had occasion upon appeal to modify the decree of the respondent court in a manner which recognized and upheld, subject to the plaintiff's riparian right, the city's appropriative rights to an extent warranting diversion and storage by

the city to the full capacity of the enlarged reservoir. (*Meridian, Ltd.,* v. *San Francisco,* 13 Cal. (2d) 424 [90 Pac. (2d) 537].) ▇ We are of the view, therefore, that in so far as the injunctive decree of the respondent court undertook to and did preclude the exercise by the city of its appropriative rights in and to the excess waters of the Tuolumne River it was affirmative or mandatory in character, within the meaning of the authorities, and was therefore automatically stayed by the appeal therefrom and the action of the city and petitioners, pending the appeal, in diverting and storing excess waters to the capacity of the enlarged reservoir was not contemptuous and the order characterizing and punishing it as such was in excess of the respondent court's power and jurisdiction and must be annulled.

In conclusion, it is well to point out that at the time of the storage which gave rise to this proceeding there was flowing by the lands of the plaintiff corporation in the principal action an amount of water much in excess of its entitlement under the respondent court's decree. In other words, at no time has the city or its agents diverted or stored water in such manner or quantity as to interfere with the taking by the plaintiff riparian owner of its decreed quantity of water.

The order adjudicating petitioners in contempt and imposing punishment therefor is annulled.